## WARD v EDY, et

Common Pleas Court, Lucas County

Decided August 25, 1938

Steven L. Markowski, Toledo, James J. Pilliod, Toledo, for plaintiff.

Martin S. Dodd, director of law, Toledo, J. Slater Gibson, assistant director of law, Toledo, for defendant.

## OPINION

By STAHL, J.

Plaintiff as a taxpayer of the city of Toledo brings this action under a statute which gives her that right to enjoin the defendants from proceeding to man Fire Station Number 3 in the city of Toledo exclusively with members of the Negro race.

Upon the filing of plaintiff's petition an application was made to the court for a temporary injunction, but the court was of the opinion that it ought not to be disposed of so summarily, and the court suggested that a demurrer be filed by the defendants, which was done, and also that the plaintiff cause the men who have been appointed to such position to be made parties. That has also been done. The court desired to give the matter the careful attention which its importance demands, and to make whatever order is made in such a manner as to give the parties an opportunity to secure a review of the case by the higher courts.

The court has now arrived at a very definite opinion in the matter.

Plaintiff alleges in her petition that some time in March, 1938, the city manager, Mr. Edy, became of the opinion that Fire Station Number 3 should be manned entirely by members of the Negro race. Notices of a proposed examination having been duly made, on May 12, 1938, the Civil Service Commission held an examination and determined the eligibility of 297 persons in the order of their standing in such examination. On June 27, 1938 the Council of the city of Toledo passed Ordinance No. 305-38 as an emergency measure, Section 1 of which reads as follows:

"Section 1. That the City Manager, Director of Public Safety and the Chief

of the Division of Fire be and they are hereby requested and directed to establish and maintain a fire company composed of colored men at No. 8 Fire House on Division Street and Indiana avenue."

Thereafter the Civil Service Commission amended Section 8 of their rules, and thereupon made up a supplemental list of eligibles composed of 22 members of the Negro race, giving them a standing in such list in the order that they appear in the original list of eligibles. For instance, the one who stood eleventh in the original list was made number one in this supplemental list and the one who stood fifty-sixth was made number two, and so on, and thereafter the City Manager duly appointed the requisite number from such supplemental list members of the fire department.

The demurrer of the defendants admits that the facts are correctly stated in the petition, but denies that they are sufficient in law to entitle the plaintiff to the relief sought. In other words, the petition claims that what has been done by the city is in violation of law, whereas the demurrer asserts that it has been lawfully done.

In 1912 the people of Ohio, in order to do away with appointments to or removal from the public civil service for political, religious or other similar considerations, to the end that such appointments should be made exclusively upon the basis of merit and fitness, amended their Constitution as follows:

"**Section 10, Article 15:** Appointments and promotions in the civil service of the state, the several counties and cities, shall be made according to merit and fitness, to be ascertained as far as practicable by competitive examination. Laws shall be passed providing for the enforcement of this provision."

In compliance with this provision of the Constitution, the legislature enacted the civil service law establishing a State Civil Service Commission and providing for examination of applicants for public appointment, and that

"From the returns of the examination, the commission shall prepare an eligible list of the persons whose general average standing upon examination for such grades or class is not less than the minimum fixed by the rules of the commission, and who are otherwise eligible and such persons shall take rank upon the eligible list in the order of their relative excellence as determined by the examination."

It is provided that appointments shall be made in accordance with the standing of such persons' on such eligible list.

At the same time the Constitution was amended to provide for home rule for cities, and further that each city might by the act of its citizens adopt a charter for its own government. In compliance with this provision, the people of the city of Toledo did adopt a charter for their government. It is true that in the case of **Hile v Cleveland, 118 Oh St 99,** the Supreme Court held that a provision in the charter of the city of Cleveland providing that a person could under certain circumstances be appointed without examination did not conflict with the Constitution of Ohio, and it might appear that the decision in that case would justify the conclusion that the people of the city might adopt a charter without providing for civil service appointments; but the people of the city of Toledo did in their charter very specifically provide for civil service examination and appointment upon the basis of fitness and merit as developed by such examination.

Section 1 of the charter gives to the city of Toledo as a corporation the power among other things,

"(m) To pass such ordinances as are expedient for maintaining and promoting the peace, good government and welfare of the city * * * and for the performance of all municipal functions * * * ."

And Section 26 thereof provides that this power shall be exercised by the council of the city.

It is urged on behalf of the defendants that this grant of general legislative power to the council ▮▮ of the city renders legal the ordinance that is here objected to. Chapter VIII (being Sections 167 to 180 of the charter), however, is as much a part of the charter as the section above quoted. It provides for the appointment of a Civil Service Commission and defines its duties. Section 171 provides for an unclassified and a classified service. The classified service is further divided into competitive and non-competitive classes. Firemen are in the competitive class of the classified service. Section 172 provides,

"The commission shall adopt, amend and enforce a code of rules which shall have the force and effect of ordinances, providing as to all persons in the classified service for appointment and employment based on merit, efficiency, moral character and industry.

"The rules shall provide:
"(a) For the classification and standardization of all positions in the classified service.

"(b) For open competitive examinations in the competitive class, to test the relative fitness of applicants for such positions. * * *

"(c) For public notice in the city journal or otherwise of the time and place of all competitive examinations.

"(d) For the creation of eligible lists upon which shall be entered the names of successful candidates in the order of their standing in such examinations or tests. * * *

"(f) For the certification to the appointing authority from the appropriate eligible list to fill a vacancy in the competitive class, of the three persons standing highest on such list, or of the person or persons on such list when it contains three names or less.

"(g) For temporary employment without examination, in the absence of an eligible list. But no such temporary employment shall continue after the establishment of a suitable eligible list."

Section 173 of the charter provides:

"When a position in the competitive classified service is to be filled, the appointing power shall notify the civil service commission of the fact. The commission shall thereupon certify to such appointing power the names and addresses of the three candidates standing highest on the eligible list for the class or grade to which such position belongs. The appointing power shall appoint to such position one of three persons thus certified." Provision is then made for proceeding "when the eligible list has been exhausted, and until a new list can be created."

The last paragraph of Section 172 reads as follows:

"The commission shall adopt such other rules, not inconsistent with the foregoing provisions of this section, as may be necessary and proper for the enforcement of the merit system."

In the brief filed on behalf of the defendants, it is argued that this "is an omnibus provision, giving the right to adopt such other rules in addition to those specifically mentioned for the proper enforcement of the merit system." On the contrary, it is an express limitation upon the power of the commission. Of course where there is a general grant of legislative power and a subsequent specific provision which limits that power, the specific provision will be strictly construed. But nevertheless the limitation upon the general power must be given the force intended for it.

These provisions of Section 172 are specific. They are clear and too plain to admit of interpretation. Suppose that three negroes should stand at the head of the eligible list as the result of the examination. If what has been done here does not violate the provisions of

the charter, then the appointing power, acting upon motives not as worthy as those that may be assigned here, could cause the matter to be so manipulated that white eligibles farther down the list could be supplemented for such appointment. If what is attempted to be done here can be done with relation to members of this group, it could be done with relation to any other group upon the whim of the administrators. This of course would be end of civil service. And it would be no answer that this would in all probability not be done, because we are dealing here solely with the question of power.

Section 175 provides:

"It shall be unlawful for the treasurer to pay any salary or compensation for service to any person holding a position in the classified service, unless the payroll or account for such salary or compensation shall bear the certificate of the commission that the persons named therein have been appointed or employed in accordance with the civil service provisions of this character."

Courts ought not to interfere with the acts of executive or administrative officers unless such acts be clearly beyond their power, but in this case it is clear that the procedure adopted by the officials of the city is in direct violation of the plain provisions of the charter. An adminstrative officer may often with propriety do that which is not in strict conformity with the provision of the statute upon the theory that conditions are such that administrative efficiency could not otherwise be had and that the public welfare requires it. It appears clearly that this is the motive which prompted this exercise of power.

But when such matter is brought before the courts and the power of the officer challenged, as has been done in this case, the courts dare not be influenced by any such consideration.

Courts must declare the law as they find it and apply it to the facts as they are. If the law be wrong, the legislature may change it by legislative enactment, or the people may alter it by charter or constitutional amendment. Confusion would follow if courts for any reason, however valid it may appear at the moment, were to declare that the law is what it is not.

But in substance it has been said here that members of the Negro race have been discriminated against and that this effort of the city is not only in the interest of general administrative efficiency, but is really a matter of justice. It may be that officers have submerged their duty in their prejudice or their interest, but whether so or not, courts dare not act upon such consideration. Members of the Negro race must stand before the court like every other person, whether rich or poor, of whatever creed or condition, neither above nor below the law, but equal before the law. If the courts were to declare that members of this race have any right under the law which they do not have, gone would be their security in the possession of the rights which they do have.

Being clearly of the opinion that the proceeding by the officers of the city is in violation of the provisions of the charter, the court is compelled to overrule the demurrer of the defendants.

In the case of **State ex Betts v Bower, 14 Abs 716,** the Court of Appeals of Franklin county in a situation almost identical with this case, held that a white man and a white woman appointed in violation of the civil service law could not hold the office, and granted a permanent injunction.

In this view, the prayer of the petition will have to be sustained and the injunction granted, but the court will make the order in such form as will best protect the interest of the parties should they desire to secure a review of this case by the higher courts.